MATTHEW W. IRWIN, Respondent, v. ROBERT PHILLIPS
and others, Appellants.

Courts are bound to take notice of the political and social condition of the country
which they judicially rule.

The policy of this Sta▮▮▮▮ indicated by her legislation. in conferring the privi-
lege to work the ▮▮ ▮ equally confers the right to divert the streams from
their natural chann▮▮▮.

These two rights stand upon an equal footing, and when they conflict, they must
be decided by the fact of priority.

The miner who selects a piece of ground to work, must take it as he finds it, sub-
ject to prior rights which have an equal equity on account of an equal recogni-
tion from the sovereign power.

APPEAL from the District Court of the Tenth Judicial District, Ne-
vada County.

The material facts of the case are contained in the opinion of the
Court.

At the trial, the jury found that the possession of the plaintiff was
anterior to that of the defendants, and under instructions from the
Court, found for the plaintiff.

Defendants' counsel excepted to the ruling of the Court, and from
the final judgment entered in the cause, appealed.

*Dunn* and *Marshall* for Appellants.

I.   The Court erred in its instructions to the jury. 1 Ch. Black.,
205, and 3 Ib., 218.  Ang. on Water Courses, p. 140, and §§ 135, 210,
216, 101, 332, 241, 350, 352, 114, 115, 127, 128, 133, 140, and 89.
Cook v. Hull, 3 Mass., 263.  Colburn v. Richards, 13 Mass., 397.
Arnold v. Foot, 12 Wend., 330.  Crooker v. Bragg, 10 Wend., 260.
People v. Canal Appraisers, 13 Wend., 355.  Summers v. Tillotson, 7
Pick., 198.  15 Johns., 217.  Coke on Littleton, 132.  Coke's Inst., 2.
Rex v. Yarborough, 3 B. and C., 91.  Ang. on Water Courses, p.
4, § 14.

II.   There cannot under our law be a prescriptive right presumed
short of an occupancy of ten years at least, as the law makes no provi-

sion on that head. See proof·as to length of occupancy, and Platt v. Root, 15 Johns., 213. Colvin v. Bennett, 17 Wend., 564.

*Jo. G. Baldwin* for Respondent.

1. The plaintiff being in possession, whether of public or private land, whether the possession be rightful or tortious, he may maintain trespass for the invasion. 2 Wheat. Selw., 1018. 1 Chitty's Pl., 178, and authorities.

2. It is especially so here, where the whole course of the General and State Governments has been to encourage the settlement and appropriation of the public land, and especially the mining lands and those necessary for the purpose of mining.

3. The negative and positive policy of the Government, raises new principles of law and new relations in reference to the mineral lands of the United States or of this State; and, therefore, this Court must apply new principles, or make new principles for this subject, and the interests connected with it, so as to advance the great ends of this new interest.

4. That this policy may be stated with sufficient definitiveness to be the right of individual appropriation, subject to such rules and limitations as may be necessary to give effect to two leading principles: First, The most productive working of the mines. Second, The interest, convenience, and profit of the greatest number.

5. But these last principles are subservient to another principle, which is necessary to give effect to these primary principles; and this principle is protection to labor and encouragement of it, which can only be given by allowing to mining claims and appropriations a right of property, with its incidents.

6. That the lands being open to this appropriation, the rule of time is the rule of right; and the first taker is to be protected in his entry and possession. This is necessary to public peace and policy.

7. That there is no difference between an appropriation of land and an appropriation of water; this being a mere accessory, as sand, gravel, gold dust, or any thing else, the Courts must give effect to this rule and right, as to the water, as to the land.

8. The water running over public land is an element, attached or

coming out of the soil, and may be used for the purpose of working out the more important interests connected with the gold and minerals.

9.   There is no reason why lands or minerals (or those owning them) in the bed or near the bed of a stream, should be preferred, in the use of this water, to lands elsewhere, any more than if coal were an element of use in working gold, it should be held for the use of the land immediately over it.

10.   If there is, then it must be either because there is something in some technical law, or in the nature of the case which is to give this privilege.

First, Technical law concedes, that by the common law, a running stream passes to the owners of land through which it flows, a right to the water. But that is on the ground of ownership. The rule is, that water is a sort of property; and law says who it belongs to. But the owner here is the Government—the Government does not claim the water—it permits all the property, land, water, gold, soil, timber, to be enjoyed, and has put no limitation on the right. It is as if no one owned it; in which case any one could get it for the taking it. There is no difference between making a reservoir and taking out a bucketful. Nor is there any more reason in the nature of things why one man should not appropriate all the water in the creek, than all the gold on the banks or in the bed.

Second, But before the defendant had *any* interest or claim, this water was diverted, and this dam made. Then the defendant squats on his claim. Being a naked possessor, without title, he takes only what he seizes; claiming every thing from mere occupation, he gets only what he squats on.

But how does he claim the water which was *before* diverted—the contents of another man's dam ?   The squatting privilege, we submit, does not retro-act, nor does it concede to the sojourner of a day the right to pull down all the mill-dams up and down the creek.

Here the defendant claims *to divert* the water from the bed of the stream for his purposes, and to trench on the plaintiff's dam, upon the ground that *the plaintiff had no right* to divert it !

11.   If the defendant, by his subsequent location, got the whole right of the Government, he did not get more than the private right; he did not get the chose in action—right to sue for torts or trespasses

or anything of the sort; nor did he get a right to the water before diverted.

12. If there be any rule or doctrine which would apply the water of a stream to the lands near by the margin, how near ? and, what the reason of any such rule ? But it was not shown that the application asked for, was, in this particular case, or as a general rule, proper, or more beneficial to the mining interest or to the public.

13. Not as a general rule, for there is no presumption that gold follows the course of streams, or of this stream; or that this was a running stream; or its length, breadth, or the country through which it flowed; or that gold and water go together; or that there is most gold where there is most water; or any general or local facts showing the application, or calling for the rule.

14. On the contrary, the water of the mining region being public property, and its use being thus permitted, the use is a private act, and may be made for the personal interest of the locator; and *prima facie* he is entitled to that he has taken: and if there is any limitation, the party setting up the limitation must show it. He has not shown that the plaintiff took too much, or took it in such a way as that the public interest suffers; or that the general interest represented, or the persons engaged in it, suffered by this act, as the representative act of a principle operating wrongfully.

15. This was not a nuisance—it was not attempted to be abated as a nuisance—there can be no nuisance in an allowed appropriation of public property. And it worked no wrong to the defendants. Every thing which annoys a man would be a nuisance according to this new reading of that word. Besides, to establish this right in the mines, where every claim would be a subject of contest, would be to establish the law of force.

*Alexander Anderson*, also for Respondent, argued—

1. Priority of location and appropriation of water-right, confer on plaintiff a right of action.

2. Defendants are trespassers, and liable for their *torts*.

3. The doctrines of the common law ; *quoad*, the rights incident to riparian ownership, and the customary flow of water in its natural

channel, are not inflexible, and must yield to the varying and peculiar circumstances of the country.

4. The rulings of the Court are correct as to the law of the case.

5. The testimony does not show that plaintiff's dam, ditch, and reservoir are such obstructions as constitute a nuisance, and, if a nuisance, whether private or public; and if private, then defendant had no right to abate it, but by action pursuant to statute.

6. The right of evidence and the law are both in favor of plaintiff, and for these reasons the judgment of the District Court should be affirmed.

*Authorities.*—The right of private property in a water course is derived from or embraced by the ownership of the soil over which it naturally passes.   Angell on Water Courses, § 5, p. 3.

The right of property in water is merely usufructuary.   Ib., § 94–5, and notes.   Ib., p. 86–7, and § 119.   See also § 128, as to the distinction between natural and artificial wants.   Ibid., pp. 130, 131, 132.

See vide, especially sec. 131 of same work, for the doctrine as laid down by Chief Justice Shaw in Carey *v.* Daniels, 8 Met., 466, qualifying the general rule of public jurisdiction, prior occupation, &c.

*Quoad*, natural and artificial easements.   See Ang., p. 146, § 148.

Easements in water courses are created by deed, devise, or record, § 168; *ergo*, a man cannot claim title to a water course but by deed and under seal.   Ang., 180.

A *grant* may be presumed from an *user* less than twenty years.   Ib., § 207.   So a *license*, § 212.

See section 225, Ib., p. 240, for consideration of the rule, that the mode or manner of using water shall not be materially varied to the prejudice of others.

*Quoad*, Public, Common, and Private Property.   See Vattel, p. 109, ch. 20.

*Quoad*, Eminent Domain.   Ib., § 244.

*Quoad*, the Use of Common Property.   Ib., § 248–9.

*Quoad*, the Right of Anticipation.   Ib., § 250, p. 114.

For the law, *quoad* the rights of riparian owners to divert water courses, as recognized in the older States.

See 2 Kinne's Comp., p. 558, and cases cited.   Also, 1 Leigh's Nisi Prius, p. 564, § 10, *et seq.*

See Williams *v.* Morland, 2 B. and C. 910, (9 Eng. C. L., 269.) Bealy *v.* Shaw, 6 East., 214. Mason *v.* Hill, (27 Eng. C. L., 11.) Rex *v.* Trafford, 20 Eng. C. L., 198, 8 Bing., 204, (21 Eng. C., L· 272.) Bower *v.* Hill, 1 Bing., N. C., 549, (27 Eng. C. L., 489.) Balston *v.* Brinstead, 1 Camp., 463. Frankum *v.* Falmouth, 6 C. and P., 529, (25 Eng. C. L,, 526·)

See, also, Gale & Whateley's Law of Easements, p. 90, *et seq.*; and also, Tyler *v.* Wilkinson, 4 Mason, U. S. Rep., 397.

HEYDENFELDT, J., delivered the opinion of the Court. MURRAY, C. J., concurred.

The several assignments of error will not be separately considered, because the whole merit of the case depends really on a single question, and upon that question the case must be decided. The proposition to be settled is whether the owner of a canal in the mineral region of this State, constructed for the purpose of supplying water to miners, has the right to divert the water of a stream from its natural channel, as against the claims of those who subsequent to the diversion take up lands along the banks of the stream, for the purpose of mining. It must be premised that it is admitted on all sides that the mining claims in controversy, and the lands through which the stream runs, and through which the canal passes, are a part of the public domain, to which there is no claim of private proprietorship, and that the miners have the right to dig for gold on the public lands was settled by this Court in the case of Hicks *et al, v.* Bell *et al.*, 3 Cal., 219.

It is insisted by the appellants that in this case the common law doctrine must be invoked, which prescribes that a water course must be allowed to flow in its natural channel. But upon an examination of the authorities which support that doctrine, it will be found to rest upon the fact of the individual rights of landed proprietors upon the stream, the principle being both at the civil and common law that the owner of lands on the banks of a water course, owns to the middle of the stream, and has the right in virtue of his proprietorship to the use of the water in its pure and natural condition. In this case the lands are the property either of the State or of the United States, and it is not necessary to decide to which they belong for the purposes of this case. It is certain that at the common law the diversion of water

courses could only be complained of by riparian owners, who were deprived of the use, or those claiming directly under them. Can the appellants assert their present claim as tenants at will? To solve this question it must be kept in mind that their tenancy is of their own creation, their tenements of their own selection, and subsequent, in point of time to the diversion of the stream. They had the right to mine where they pleased throughout an extensive region, and they selected the bank of a stream from which the water had been already turned, for the purpose of supplying the mines at another point.

Courts are bound to take notice of the political and social condition of the country, which they judicially rule. In this State the larger part of the territory consists of mineral lands, nearly the whole of which are the property of the public. No right or intent of disposition of these lands has been shown either by the United States or the State governments, and with the exception of certain State regulations, very limited in their character, a system has been permitted to grow up by the voluntary action and assent of the population, whose free and unrestrained occupation of the mineral region has been tacitly assented to by the one government, and heartily encouraged by the expressed legislative policy of the other. If there are, as must be admitted, many things connected with this system, which are crude and undigested, and subject to fluctuation and dispute, there are still some which a universal sense of necessity and propriety have so firmly fixed as that they have come to be looked upon as having the force and effect of *res judicata* Among these the most important are the rights of miners to be protected in the possession of their selected localities, and the rights of those who, by prior appropriation, have taken the waters from their natural beds, and by costly artificial works have conducted them for miles over mountains and ravines, to supply the necessities of gold diggers, and without which the most important interests of the mineral region would remain without development. So fully recognized have become these rights, that without any specific legislation conferring, or confirming them, they are alluded to and spoken of in various acts of the Legislature in the same manner as if they were rights which had been vested by the most distinct expression of the will of the law makers; as for instance, in the Revenue Act "canals and water races" are declared to be property subject to taxation, and this when there was none other in the State.

than such as were devoted to the use of mining. Section 2 of Article IX of the same Act, providing for the assessment of the property of companies and associations, among others mentions "dam or dams, canal or canals, or other works for mining purposes." This simply goes to prove what is the purpose of the argument, that however much the policy of the State, as indicated by her legislation, has conferred the privilege to work the mines, it has equally conferred the right to divert the streams from their natural channels, and as these two rights stand upon an equal footing, when they conflict, they must be decided by the fact of priority upon the maxim of equity, *qui prior est in tempore potior est in jure.* The miner, who selects a piece of ground to work, must take it as he finds it, subject to prior rights, which have an equal equity, on account of an equal recognition from the sovereign power. If it is upon a stream the waters of which have not been taken from their bed, they cannot be taken to his prejudice; but if they have been already diverted, and for as high, and legitimate a purpose as the one he seeks to accomplish, he has no right to complain, no right to interfere with the prior occupation of his neighbor, and must abide the disadvantages of his own selection.

It follows from this opinion that the judgment of the Court below was substantially correct, upon the merits of the case presented by the evidence, and it is therefore affirmed.