JAMES W. TARTAR, Respondent, v. THE SPRING CREEK WATER AND MINING COMPANY, Appellants.

The right to mine for the precious metals can only be exercised upon public lands; and although it carries with it the incidents to the right, such as the use of wood and water, those incidents also must be of the public domain.

A prior appropriation of the public domain establishes a *quasi* private proprietorship, which entitles the owner to be protected in its quiet enjoyment against all the world but the true owner, except in the case of agricultural and grazing lands, as against the privileges granted to miners.

APPEAL from the District Court of the Ninth Judicial District, Shasta County.

Bill for an injunction to restrain the defendants from diverting the water course of plaintiff's mill. The facts are as follows:

In June, 1852, A. G. Chauncey & Co. commenced the construction of a saw mill on lands of the United States in Shasta county, at the mouth of a small stream called Spring Creek, and completed it in November of the same year, at a cost of about ten thousand dollars. The lands were mineral lands of the United States, containing mines of gold. The length of the creek, from its source to its mouth, was about sixteen miles, and ran entirely through lands of the United States containing gold mines.

As soon as the mill was completed, Chauncey & Co. occupied it, and continued to use it until the 15th day of January, 1854. The water of said creek was the motive power by which the machinery of the mill was propelled. The defendants, who were miners, and a corporation

under the laws of this State, in June, 1853, commenced the construction of a dam, ditch, and flumes, about five miles above the saw mill, in order to divert the water of the creek to mining lands in the immediate vicinity, to be used for the purposes of mining  The water was necessary, to enable the defendants to extract the gold from the land where the same was conveyed; and the ditch and flumes were constructed in the year 1853, to the extent of about five miles, and the dam across said creek was completed, by which the water was diverted, in October of the same year, from its natural channel into the said ditch and flume, and conveyed to the mining lands in its vicinity, and there was used, and had since been used, by the defendants for mining purposes, up to the time of the filing of the complaint.  The cost of the construction of the said flume, ditch, and dam, was about eighteen thousand dollars.

Chauncey & Co. sold and delivered to the defendants a great portion of the lumber used in the construction of said flume, and were paid by defendants several thousand dollars therefor; and Chauncey & Co. knew, at the time of such sale and delivery, the purposes for which the same was to be used.  For five months of the year, from June 1st to November 1st, the water of said creek is not sufficient for the said miners and the propelling of said mill at the same time; but during the rest of the year, the water of the stream is sufficient, both for the defendants and plaintiff.

The plaintiff succeeded to the rights of Chauncey & Co. on January the 15th, 1854, with a full knowledge of the above facts, and continued to use the mill until July, 1854.  The defendants, since the 15th January, 1854, and before the commencement of this suit, extended their ditch and flume about a mile, at a cost of two thousand dollars, and the plaintiff sold and delivered lumber to them, amounting to several hundred dollars, to be used in such extension, and was paid for the same.  By means of the diversion of the water, during the time the water was insufficient for both the plaintiff and defendants, the plaintiff, in the year 1854, and before the commencement of this suit, did not make as much by his mill as he otherwise would have done, to the amount of one thousand dollars.

The cause was tried by the Court, who, *pro forma*, granted a per-

petual injunction, and decreed damages to the amount of one thousand dollars. Defendants appealed.

*Sprague* and *Field*, and *James A. McDougal*, for Appellants.

1. The right of the defendants to mine upon the land, gives them the right to all the incidents for the purpose of mining. Ang. on Water Courses, §§ 5, 8, 90, 314, 398. O'Connor *v.* Corbitt, 3 Cal., 371. Comp. L., p. 896. Hicks *v.* Bell, 3 Cal., 227.

2. The facts admitted in the statement constitute a license from A. G. Chauncey & Co., through whom the plaintiff claims, to the defendants, to construct the works complained of, and to divert the water of Spring Creek from its natural channel. This being followed by the expenditure of money on the part of the defendants, is a bar to the recovery of damages until the license is revoked. Miller *v.* The Auburn and Syracuse R. R. Co., 6 Hill, 61. Ang. on Water Courses, §§ 318–322. Liggins *v.* Inge, 7 Bing , 682. Winter *v.* Brockwell, 8 East., 308. Rerick *v.* Kern, 14 Serg. and R., 267. 2 Am. Ld. Cases, 686. Kent *v.* Kent, 18 Pick., 569. Whitemarsh *v.* Walker, 1 Met., 313. Clement *v.* Durgen, 5 Greenl., 9. Henry *v.* Henry, 2 Denio, 625.

*Crocker & Robinson*, for Respondent.
No brief on file.

HEYDENFELDT, J., delivered the opinion of the Court. MURRAY, C. J., concurred.

The current of decisions of this Court go to establish, that the policy of this State, as derived from her legislation, is to permit settlers, in all capacities, to occupy the public lands, and by such occupation, to acquire the right of undisturbed enjoyment against all the world but the true owner.

In evidence of this, Acts have been passed to protect the possession of agricultural lands acquired by mere occupancy; to license miners; to provide for the recovery of mining claims; recognizing canals and ditches which were known to divert the water of streams from their natural channels, for mining purposes; and others, of like character.

This policy has been extended equally to all pursuits, and no partiality for one over another has been evinced, except in the single case

where the rights of the agriculturist are made to yield to those of the miner, where gold is discovered in his land. This exceptional privilege is of course confined to public lands, as we held in Stokes v. Barrett and others, at the last January Term. The policy of the exception is obvious. Without it, the entire gold region might have been enclosed in large tracts, under the pretence of agriculture and grazing and eventually, what would have sufficed as a rich bounty to many thousands, would be reduced to the proprietorship of a few.

Aside from this, the legislation and decisions have been uniform in awarding the right of peaceable enjoyment to the first occupant, either of the land, or of any thing incident to the land. In the case of Irwin v. Phillips, at the January Term, the question was as to the use of water, and it was decided upon the principle of prior occupancy.

The appellants insist, that as the State has granted the franchise of digging gold, all of the incidents necessary to that purpose—wood, water, &c.,—must follow. This is certainly the doctrine of the common law, and would be held decisive in this case, in the absence of any other right to contradict it. But in previous decisions we have shown that there is nothing sufficiently expressive in the character of that legislation, which warrants an interference with the already acquired rights of individuals, except in the single case of agricultural lands. In the case of Stokes v. Barrett, we declared, that " to authorize an invasion of private property, in order to enjoy a public franchise, would require more specific legislation than any yet resorted to."

In Irwin v. Phillips, we say, " that however much the policy of the State, as indicated by her legislation, has conferred the privilege to work the mines, it has equally conferred the right to divert the streams from their natural channels." And further we say, " the miner who selects a piece of ground to work, must take it as he finds it, subject to prior rights which have an equal equity on account of an equal recognition by the sovereign power."

In the case of Fitzgerald v. Urton, at the July Term, it appeared that a party of miners invaded, for mining purposes, a town lot, built upon and used as a tavern and stable yard. The defendants there relied upon the statute, which gives mining privileges upon public lands in the possession of others for agricultural and grazing purposes. In

referring to that statute, we say: " In permitting miners, however, to go upon public lands occupied by others, it has legalized what would otherwise have been a trespass, and the Act cannot be extended by implication to a class of cases not specially provided for."

It results, from the consideration we have given the case, that the right to mine for the precious metals, can only be exercised upon public lands; that although it carries with it the incidents to the right, such as the use of wood and water, those incidents must also be of the public domain in like manner as the lands; that a prior appropriation of either to steady individual purpose, establishes a *quasi* private proprietorship, which entitles the holder to be protected in its quiet enjoyment against all the world but the true owner, except in the single case provided to the contrary by the statute which I have already adverted to.

Upon the remaining point argued, I have only to add, that the facts do not make out a license from the respondent to the appellants. It would be strange to take away a party's rights upon such slight grounds.

Judgment affirmed.