[Civ. No. 17532. Third Dist. Mar. 21, 1979.]

CALIFORNIA TROUT, INC., Plaintiff and Appellant, v.
STATE WATER RESOURCES CONTROL BOARD et al.,
Defendants and Appellants.

---

**COUNSEL**

William R. Attwater, Gavin M. Craig, James T. Markle and Craig M. Wilson for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard, Adolph Moskovitz, Clifford W. Schulz, Ronald A. Zumbrun, Raymond M. Momboisse, Elleene A.

Kirkland, Thomas F. Olson and Jeanne M. Bauby as Amici Curiae on behalf of Defendants and Appellants.

McCutchen, Doyle, Brown & Enersen, John R. Reese and Barry P. Goode for Plaintiff and Appellant.

P. A. Towner, Russell Kletzing and Marcia J. Steinberg as Amici Curiae on behalf of Plaintiff and Appellant.

## OPINION

**REGAN, J.**—Defendants (board) appeal from the trial court's judgment, entered upon stipulated facts, ordering the board to consider, on its merits, plaintiff's application to appropriate water from Redwood Creek in Marin County. The board had acted adversely on plaintiff's application to appropriate water (from Jan. 1 to Dec. 31 of each year) flowing in Redwood Creek without taking possession of the water or diverting it, but rather by putting it to beneficial use inside the stream itself by allowing it to flow naturally and freely in the stream for "preservation and enhancement of fish and wildlife."[1] The adverse action consisted of a refusal by the board to consider the application as it showed on its face there was to be no diversion of water from the stream or any physical control of the water. The trial court, acting on plaintiff's complaint for declaratory relief, declared in its formal judgment that "water may be appropriated within the meaning of the Water Code and California case law without the exercise of physical control of the water." Moreover, the court declared the board must accept and determine plaintiff's application for appropriation since plaintiff had "standing" to make such an application for the "public use of protecting fish and wildlife, . . ." The quoted language from the judgment frames the principal issues raised on appeal. Applicant described Redwood Creek as a navigable river and sought to appropriate three cubic feet per second as the "minimum flow needed to maintain suitable fisheries habitat so that juvenile anadromous fish can survive and migrate to sea."

 On appeal, the board contends that water may not be appropriated within the meaning of the Water Code without the exercise of

---

[1] Plaintiff is a nonprofit corporation composed of fishermen, conservationists, biologists and others.

some form of physical control or possession of the water such as a diversion from the stream channel or regulation of the water within the channel. This was its specific reason for rejecting the application. The board also contends it need not, and actually cannot, accept an application by a "private party" such as plaintiff where such application seeks to appropriate water for the exclusive "public use" of protecting fish and wildlife.

■ The entire history of the origin and development of the doctrine of appropriation of water in California, existing alongside the ancient common law concept of riparian rights, demonstrates that appropriation of water in the legal sense involves possession of the water, evidenced by some form of diversion or physical control over it. The courts from the very birth of the legal concept of appropriation of water have uniformly evidenced the basic common element of possession. Sometimes it is referred to as a "taking" of water, "diversion," or a "physical control." (See, e.g., *Tartar* v. *The Spring Creek Water and Mining Co.* (1855) 5 Cal. 395—use of a water wheel to power a mill; *Simons* v. *Inyo Cerro Gordo Co.* (1920) 48 Cal.App. 524 [192 P. 144]—diversion of water from springs for domestic and milling purposes; *Meridian, Ltd.* v. *San Francisco* (1939) 13 Cal.2d 424 [90 P.2d 537]—impounding water in a reservoir.)

Concomitant with the possession concept in the law of appropriation is the relationship between appropriation and legal right of access to a stream with incidental right to use water. Under such circumstances, an appropriative right may arise, as distinct from riparian rights. Such cases are illustrated by situations in which, for example, an owner of livestock with legal right of access to a stream may gain an appropriative right to use water from the stream for his cattle to drink. (See *Hunter* v. *United States* (9th Cir. 1967) 388 F.2d 148.)

Although the concept or doctrine of appropriative rights to water was first recognized by the courts (e.g., *Irwin* v. *Phillips* (1855) 5 Cal. 140) it was soon formalized in California into a statutory pattern. Thus, in 1872, statutory procedures for obtaining appropriative water rights were enacted. These were first contained in Civil Code sections 1410 to 1422, parts of which remain in title 8 of part 4 of division 2 (commencing with § 1410a) of the Civil Code and parts of which are now contained in part 2 of division 2 (commencing with § 1200) of the Water Code. The statutory provisions contained in the Water Code, which was enacted as a code in

1943, now furnish the exclusive method of appropriating water (Wat. Code, §§ 2, 1201, 1225.)

The statutory pattern makes it plain that possession of some sort must be taken of the water. The most pertinent statute is section 1260 of the Water Code which is a descendant and refinement of the original section 16 of the Water Commission Act of 1913. (Stats. 1913, ch. 586, p. 1021.) Thus, Water Code section 1260 provides, in pertinent part, that every application for a permit to appropriate water shall set forth, inter alia, the location of and description of the proposed headworks, ditch, canal, and other works, the proposed place of diversion, and the time within which it is proposed to begin and to complete construction. The application filed by plaintiff in this case states none of these things. It leaves blank the portions of the board's official application form devoted to "Description of Diversion Works." In the portion of the form for describing points of diversion, plaintiff states "no points of diversion." The portion headed "Completion Schedule" is left blank.

■ The present water law with respect to appropriation is well summed up by one eminent authority as follows: "To constitute a valid appropriation of water, three elements must always exist: (1) An intent to apply it to some existing or contemplated beneficial use; (2) an actual diversion from the natural channel by some mode sufficient for the purpose; and (3) an application of the water within a reasonable time to some beneficial use." (Hutchins, The Cal. Law of Water Rights (1956) p. 108.)

Our reading of the overwhelmingly supportive case law and statutes on the subject leads us to a complete accord with Hutchins. (*Id.*, at pp. 108-112, and cases and statutes therein cited.) We hold that plaintiff's application showed on its face that no legally recognized appropriation of water was contemplated and the application was properly summarily rejected by the board.

Since it may be thought by some that the statutory and case law appropriation of waters in this state have somehow callously overlooked the interests of fish and fisheries in the watercourses of the state, we deem it appropriate to point out that there are protections afforded to such interests by existing law, working in conjunction with the law of appropriation of water. Thus, the Legislature has provided in sections

1243 and 1243.5[2] of the Water Code that (a) the board must notify the Department of Fish and Game of all applications to appropriate water; (b) the department must recommend the amounts of water required for preservation of fish and wildlife resources; (c) the board must take into account such amounts. Moreover, in Water Code section 1257 the board is directed to consider the preservation and enhancement of fish and wildlife in acting upon any application to appropriate water.

The Legislature has enacted other specific statutes which establish the method to be followed to protect and enhance fish and wildlife species. Chapter 4 of division 2 of the California Fish and Game Code (§ 1300 et seq.) establishes a Wildlife Conservation Board with broad powers to investigate which streams and lakes are suitable for or can be made suitable for fishing (§ 1345) and authorizes it to purchase and acquire lands and water rights when necessary to carry out its purposes, including maximum revival of wildlife. (§§ 1347, 1348.) Fish and Game Code section 1501 authorizes the Department of Fish and Game to expend funds as may be necessary for the improvement of lakes and streams for fish. There are procedures which are to be followed by governmental agencies and the Department of Fish and Game when diversions of water are proposed in projects which could impact existing fish or wildlife resources, and Fish and Game Code section 1601 sets forth detailed guidelines to assist in assuring that fishery resources are considered during the planning of such projects.[3] In conjunction with all this, the

[2]Water Code section 1243 reads as follows: "The use of water for recreation and preservation and enhancement of fish and wildlife resources is a beneficial use of water. In determining the amount of water available for appropriation for other beneficial uses, the board shall take into account, whenever it is in the public interest, the amounts of water required for recreation and the preservation and enhancement of fish and wildlife resources.

"The board shall notify the Department of Fish and Game of any application for a permit to appropriate water. The Department of Fish and Game shall recommend the amounts of water, if any, required for the preservation and enhancement of fish and wildlife resources and shall report its findings to the board. . . ."

Water Code section 1243.5 reads as follows: "In determining the amount of water available for appropriation, the board shall take into account, whenever it is in the public interest, the amounts of water needed to remain in the source for protection of beneficial uses, including any uses specified to be protected in any relevant water quality control plan established pursuant to Division 7 (commencing with Section 13000) of this code.

"This section shall not be construed to affect riparian rights."

[3]Of less direct effect but incidental to the clear statutory scheme for protection of fish and wildlife is the California Wild and Scenic Rivers Act (Pub. Resources Code, § 5093.50 et seq.) which is designed to preserve certain rivers in their natural state for fish and wildlife values, among other things. Also, the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) declares the policy of the Legislature to prevent the elimination of fish and wildlife species, among other things.

provisions of the Water Code to which we have previously adverted establish the manner by which the board and the Department of Fish and Game, with the assistance of private organizations which may desire to be heard, ascertain, on a case-by-case basis, what levels of instream flows should remain in a watercourse when competing appropriation rights are sought.

The board also contends an application by a private party, such as plaintiff, to appropriate water cannot be accepted where the appropriation would be for the exclusive public use of protecting fish and wildlife. In view of our holding as set forth above, we need not consider the issue of plaintiff's standing as an applicant.

Having determined we must reverse the trial court's judgment that the board "must accept and determine on its merits" plaintiff's application to appropriate water, we turn to plaintiff's cross-appeal contending that under the provisions of Code of Civil Procedure section 1021.5,[4] the "substantial benefits" doctrine and the "private attorney general rule," plaintiff is entitled to attorney's fees both for the trial and for the appeal.

The trial court having erred in rendering judgment for plaintiff, plaintiff is ipso facto foreclosed from any right to attorneys fees at the trial level, and since on appeal we shall reverse the judgment below in plaintiff's favor, plaintiff is likewise foreclosed from attorneys fees on appeal.

The judgment is reversed.

Puglia, P. J., concurred.

**REYNOSO, J.**—I dissent. "Appropriation of water" in California is simply a way of designating who is entitled to what portion of water. Respondent asserts and appellants agree that an appropriative right can be perfected without diversion of the water. But appellants mistakenly maintain that some physical control must be exercised over the water: the true test of an appropriative right is the successful application of the water to a beneficial use. In those cases where beneficial use required a

---

[4]Code of Civil Procedure section 1021.5 provides for the award of attorney's fees in certain cases to an attorney in successful cases enforcing an important right affecting the public interest.

diversion of the water, such as in mining, the law also required a diversion. (*Irwin* v. *Phillips* (1855) 5 Cal. 140.) But where the beneficial use involved a deriving power from the flow of the stream, decisional law allowed a water wheel to be placed in the stream to attain such an end. (*McDonald & Blackburn* v. *Bear River and Auburn Water and Mining Company* (1859) 13 Cal. 220; *Tartar* v. *The Spring Creek Water and Mining Co.* (1855) 5 Cal. 395.) Similarly, the law sanctions a reservoir as a means of achieving an appropriator's beneficial recreational use (*Meridian, Ltd.* v. *San Francisco* (1939) 13 Cal.2d 424 [90 P.2d 537]) and views cattle access to drinking from a stream as a way to achieve the beneficial use of stock watering. (*Hunter* v. (9th Cir. 1967) 388 F.2d 148.) Clearly, the law views beneficial use as the sine qua non of an appropriative right: the water can be used by diverting it from the main channel or by allowing it to flow in the stream, whichever is appropriate. As elements of an appropriative right, diversion, possession, or physical control are then significant only insofar as they demonstrate that the water is to be put to beneficial use.

Nonetheless, the majority attempts to fashion a common law rule requiring that an appropriative right be evidenced by diversion, possession, or physical control. In doing so, it cites cases which hold only that diversion, possession, or physical control was a means of demonstrating prior rights to would be appropriators. (See *Irwin* v. *Phillips, supra,* 5 Cal. 140; *Tartar* v. *The Spring Creek Water and Mining Co., supra,* 5 Cal. 395.) But what may have served to notify the pioneers as to who was already using the water has become obsolete in modern times. In an increasingly complex society, the State Water Resources Board (Board) has been created to allocate water use through the workings of a governmental machinery and not on the basis of priority claims as staked on the land.[1]

In effectuating water law in this case, the Board looks to the Water Code. Contrary to the majority's interpretation, I conclude that Water Code section 1260 requires that an application for a permit to appropriate set forth information regarding diversion and construction *only if* such diversion or construction is contemplated by the applicant. That is, if the intended beneficial use requires diversion or construction for its realiza-

---

[1]The majority confuses the concept of possession as it applies to an appropriative right. As appellants concede, an appropriative right is a usufructuary right and therefore an incorporeal hereditament. (Weil, Water Rights in the Western States (3d ed. 1911); Kinney, Kinney on Irrigation and Water Rights (2d ed. 1912). An appropriation, as an intangible, *cannot* be physically possessed, as the majority believes it must, before it can become an appropriation right.

tion, the application should contain such relevant information; otherwise, that information is simply inappropriate.[2] The decisional law, as we have noted above, is consistent with the code.

In addition, the California Constitution anchors the state's water policy on beneficial use: "It is hereby declared that . . . the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable. . . ." (Cal. Const., art. X, § 2.) The Water Code underscores this policy: "The board shall allow the appropriation for beneficial purposes of unappropriated water under such terms and conditions as in its judgment will best develop, conserve, and utilize in the public interest the water sought to be appropriated." (Wat. Code, § 1253), and "The use of water for recreation and preservation and enhancement of fish and wildlife resources is a beneficial use of water." (Wat. Code, § 1243.) Moreover, there is nothing in the code that prohibits appropriation for in-stream use. Because respondent seeks to appropriate water for a beneficial in-stream use—the preservation and enhancement of fishery resources in the state—diversion, possession, or physical control are unnecessary elements of its application for a permit to appropriate.

The question remains as to what *type* of in-stream use the appropriation may serve. Respondent seeks to appropriate water which it will not use exclusively. In fact, it stipulates that its use will be coexistensive with the public use. I believe that respondent, as a private party, may appropriate water for the public use. That is, respondent may assert the public trust contained within the fish and wildlife resources of the states. (See *Marks* v. *Whitney* (1971) 6 Cal.3d 251 [98 Cal.Rptr. 790, 491 P.2d 374]; *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423]; *Bohn* v. *Albertson* (1951) 107 Cal.App.2d 738 [238 P.2d 128].) There is nothing in the Water Code to suggest that a private appropriator must benefit to the exclusion of the general public. Indeed, that an appropriation benefit only the appropriator is inimical to the very concept of beneficial use. Both the California Constitution and the Water Code demand that a proposed use benefit the society as well as the private appropriator. Thus, the Constitution states: "[T]he general welfare requires that . . . the conservation of such waters is to be

---

[2]Water Code section 1260 provides in pertinent part: "Every application for a permit to appropriate water shall set forth all of the following: . . . (d) The location and description of the *proposed* headworks, ditch, canal, and other works. (e) The *proposed* place of diversion. (f) The place where it is intended to use the water." (Italics added.) The application is not *required* to propose a diversion. Manifestly, the application need not contain such a proposal if it is inappropriate for the intended use.

exercised with a view to the *reasonable and beneficial use thereof in the interest of the people and for the public welfare. . . ."* (Cal. Const., art. X, § 2; italics added.) The Water Code contains virtually the same language: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that . . . conservation of such water is to be exercised with a view to the reasonable and beneficial use thereof *in the interest of the people and for the public welfare."* (Wat. Code, § 100.) Section 1253 directs that the board makes its appropriation decisions in pursuit of the beneficial *public* use. Respondent, then, may legitimately appropriate water for public use.

Accordingly, I would affirm the trial court's judgment that neither diversion, possession, or physical control is an essential element of a valid appropriation right, and that the board should accept respondent's application for a permit to appropriate water for public, in-stream use. As pointed out by the Department of Water Resources in its amicus brief, the public cannot be left in a position of nay saying every private application for appropriation. Since it is up to appellant to make tough decisons as to the appropriate use of the water the appellant Board should not deny itself the authority to make a decision as to whether or not the water is best used for purposes sought by the respondent. The appellant Board may not agree with the respondent's application; it may agree and later change its mind; or it may agree. What it should not be permitted to do is to decide the issue without deciding.

My conclusion would necessarily lead to the consideration of attorney's fees. (See Code Civ. Proc., § 1021.5.) I would remand to the trial court for a determination as to the appropriateness of attorney's fees.

A petition for a rehearing was denied April 17, 1979, and the opinion was modified to read as printed above. The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied July 12, 1979. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.