[Civ. No. 24287. First Dist., Div. Three. July 24, 1968.]

ALAMEDA CONSERVATION ASSOCIATION, Plaintiff and Appellant, v. CITY OF ALAMEDA et al., Defendants and Respondents.

Henry M. Siegel, Benjamin F. Marlowe and Neil Cunningham for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Paul M. Joseph, Deputy Attorney General, Frederick M. Cunningham, City Attorney, Townsend & Alley, Peter L. Townsend, Roy L. Alley, Louis I. Mallette, Lawrence D. Becker, Orrick, Herrington, Rowley & Sutcliffe, William H. Orrick, Jr., Willoughby C. Johnson, Davis, Craig & Bartalini and James B. Davis for Defendants and Respondents.

DRAPER, P. J.—Plaintiff sought to enjoin alleged dredging and filling of tidelands. Defendants are the City of Alameda, the board of trustees of Bay Farm Island Reclamation District No. 2105, Shore Line Properties, Inc., and the State of California. Plaintiff alleged that the lands in issue were granted to defendant city by a 1913 act of the California Legislature (Stats. 1913, ch. 348, p. 707, as amended by Stats. 1917, ch. 594, p. 709). This act specifically conveys the lands in trust, limiting their use to furtherance of commerce and navigation. If these lands were so conveyed, there could well be a question of fact, determinable in this proceeding, whether their present or proposed use is within the limited trust purpose. Defendants, however, asserted that all lands included in this action in fact were acquired almost a century ago, by private owners, through deeds from the state under authorization of acts of 1868 (Stats. 1867-1868, ch. 543, p. 716) and

1870 (Stats. 1869-1870, ch. 388, p. 541), and that the corporate defendant's title derives from those grantees. On this basis, they moved for summary judgment, which was granted. Plaintiff appeals.

▮ No citation of authority is required to establish that reservations of a 1913 grant could not limit title transferred in fee and without restriction many years earlier.

· But this does not dispose of the issue. ▮ Although a state owns the lands underlying its bays (*People* v. *California Fish Co.,* 166 Cal. 576, 584 [138 P. 79]), see *United States* v. *California,* 332 U. S. 19, 30 [91 L.Ed. 1889, 1894, 67 S.Ct. 1658]), it holds them in trust for the public for purposes of navigation and commerce (*People* v. *California Fish Co., supra*). But this trust is terminable. Upon proper legislative determination, such lands may be transferred by the state free of the trust. ▮ Conveyance of like lands under the acts of 1868 and 1870 does in fact so terminate the trust and pass unrestricted title to the grantee (*Knudson* v. *Kearney,* 171 Cal. 250 [152 P. 541]; see *Boone* v. *Kingsbury,* 206 Cal. 148, 186 [273 P. 797]; *Richmond Wharf & Dock Co.* v. *Blake,* 39 Cal.App. 1, 4 [177 P. 508]). The very acts here involved have been described as "[t]he most striking instance of the exercise of this power of absolute disposition of such tide or submerged lands by the state of California" (*People* v. *California Fish Co., supra,* 166 Cal. 576, 585). Thus it has long since been determined that deeds under the acts of 1868 and 1870 do dispose absolutely of the land, and terminate any trust therein. ▮ It follows that the 1871 deeds of the lands here involved transferred them to private ownership free of trust, and left no title to be granted or restricted by the act of 1913.

Plaintiff argues that the declarations in support of the motion for summary judgment are insufficient to establish validity of the 1871 deeds from the state to private owners. The acts of 1868 and 1870 require preparation of subdivision maps, sale at public auction of lots shown on such maps, and payment of 25 percent of the bid price by each buyer. These steps are shown in detail by the declarations and exhibits incorporated in them. Read together, as they must be, the acts provide that the commissioners shall, upon receipt of payment of 25 percent of the high bid, execute deed to the purchaser to be deposited with the state treasurer, who shall deliver it to the grantee only when he has received the remaining 75 percent of the bid price. Plaintiff argues that payment of the 75

percent remaining due after the initial auction is not properly shown. But the deeds attached to the declarations show that they were delivered, since all have been recorded. Thus the presumption that official duty has been regularly performed (Evid. Code, § 664) applies, and the burden of proving non-payment of the full balance falls upon plaintiff (Evid. Code, § 604). Plaintiff has introduced no evidence on this issue.

Moreover, the declaration of an officer of the state agency having custody of the records here in issue avers that these official records show that "the lots were paid for in full." This declaration is not merely conclusory. It directly avers the content of records which are public and thus available to plaintiff. Yet plaintiff never denies the accuracy of the averment. It merely suggests that it is insufficiently detailed. We cannot agree. These transactions of nearly a century ago obviously are not the subject of recollection by persons now living. Only the official records are available and defendants' declarations adequately establish them.

Plaintiff's contention that the deeds could be executed only by the governor is negated by the terms of the acts of 1868 and 1870, which clearly provide for execution by the commissioners. There is no merit in plaintiff's assertion that the acts involve some unconstitutional delegation of legislative authority.

Plaintiff raised only issues of law in its attack upon the validity of the deeds of 1871. The trial court properly determined these issues adversely to plaintiff and there were no issues of fact to be tried.

■ Plaintiff also asserts that "evidence" of the impropriety of a contract between defendant city and defendant Shore Line was improperly rejected. The reference apparently is to a document entitled "Affidavit in Opposition to Summary Judgment." But that document was neither verified nor executed under penalty of perjury. If that defect were in fact remedied by amendment, as suggested by plaintiff but not shown in the clerk's transcript, the document still fails to meet the statutory requirement that the affidavit show the facts to be within the personal knowledge of affiant and that he, if sworn as a witness, could testify competently thereto (Code Civ. Proc., § 437c.) Moreover, the claimed issue is not within plaintiff's pleading, which asserts the ordinance to be invalid only because in violation of the trust imposed by the 1913 legislative grant, which we have determined to be inapplicable here.

█ Plaintiff also asserts that the trial court denied its motion to amend the complaint. But no such motion was made. After the court granted the motion for summary judgment, plaintiff did orally request leave to amend. The court did not pass on the belated motion, but suggested it be made in writing and heard in the law and motion department. No such motion was made, no proposed amendment has been submitted, and there is no ruling on which to predicate error (see 2 Witkin, Cal. Procedure, § 596 (a)).

█ Finally, plaintiff asserts disqualification of the trial judge because he is a judge of the county in which the land is situated (Code Civ. Proc., § 170, subd. 6). We need not determine whether this action is within the cited subdivision, since it is apparent that the motion was made too late. The motion for summary judgment was set for hearing before the presiding judge January 20. He stated that it would be "assigned out to a civil trial judge" for hearing January 27. The issues were extensively argued before Judge Phillips that day. The case was continued to February 7 for decision. The motion to disqualify Judge Phillips was not presented until the date of this continued hearing. Section 170 requires that the objection to a judge be presented "at the earliest practicable opportunity, after . . . discovery of the facts constituting the ground of the judge's disqualification. . . ." Since no out-of-county judge was requested or assigned, it was apparent when the motion for summary judgment was made that it would be heard before a judge of Alameda County. The presiding judge's order of January 20 substantially confirmed this, and the actual hearing of the case by Judge Phillips January 27 emphasized the fact. The delay until well after this date thus constitutes a waiver of the disqualification (*Sacramento etc. Drainage Dist.* v. *Jarvis,* 51 Cal.2d 799, 801 [336 P.2d 530] ; *Rio Vista Gas Assn.* v. *State,* 188 Cal.App.2d 555, 564 [10 Cal.Rptr. 559] ; see *Caminetti* v. *Pacific Mut. Life Ins. Co.,* 22 Cal.2d 386 [139 P.2d 930] ; *People* v. *Pratt,* 205 Cal.App.2d 838, 843-845 [23 Cal.Rptr. 469] ).

The judgment and the order denying motion to disqualify the trial judge are affirmed.

Salsman, J., and Brown (H. C.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1968.