[S.F. No. 22566. In Bank. Dec. 9, 1971.]

LARRY H. MARKS, JR., Plaintiff, Cross-defendant and Respondent, v. PETER D. WHITNEY et al., Defendants, Cross-complainants and Appellants;
JEAN MARKS, Cross-defendant and Respondent.

## COUNSEL

Albert M. Monaco and Heller, Ehrman, White & McAuliffe for Defendants, Cross-complainants and Appellants.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Charles A. O'Brien, Chief Deputy Attorney General, Jay L. Shavelson, Assistant Attorney General, N. Gregory Taylor, E. Clement Shute, Jr., Phillip G. Samovar, Deputy Attorneys General, William C. Simmons, J. Bert Morgan, Phillip S. Berry, R. Frederic Fisher and Lillick, McHose, Wheat, Adams & Charles as Amici Curiae on behalf of Defendants, Cross-complainants and Appellants.

Myers, Praetzel & Pierce and Wallace S. Myers for Plaintiff, Cross-defendant and Respondent and for Cross-defendant and Respondent.

Pillsbury, Madison & Sutro, Noble K. Gregory, Allan N. Littman and John T. Hansen as Amici Curiae on behalf of Plaintiff, Cross-defendant and Respondent and Cross-defendant and Respondent.

## OPINION

McCOMB, J.—This is a quiet title action to settle a boundary line dispute caused by overlapping and defective surveys and to enjoin defendants (herein "Whitney") from asserting any claim or right in or to the property of plaintiff Marks. The unique feature here is that a part of Marks' property is tidelands acquired under an 1874 patent issued pursuant to the Act of March 28, 1868 (Stats. 1867-68, ch. 415, p. 507); a small portion of these tidelands adjoins almost the entire shoreline of Whitney's upland property. Marks asserted complete ownership of the tidelands and the right to fill and develop them. Whitney opposed on the ground that this would cut off his rights as a littoral owner and as a member of the public in these tidelands and the navigable waters covering them. He requested a declaration in the decree that Marks' title was burdened with a public trust easement; also that it was burdened with certain prescriptive rights claimed by Whitney.

The trial court settled the common boundary line to the satisfaction of the parties. However, it held that Whitney had no "standing" to raise the public trust issue and it refused to make a finding as to whether the tidelands are so burdened. It did find in Whitney's favor as to a prescriptive easement across the tidelands to maintain and use an existing seven-foot wide wharf but with the limitation that "Such rights shall be subject to the right of Marks to use, to fill and to develop" the tidelands and the seven-foot wide easement area so long as the Whitney "rights of access and ingress and egress to and from the deep waters of the Bay shall be preserved" over this strip.

The appeal is on a limited record, namely, the clerk's transcript and designated exhibits, including certified copies of official recorded patent, maps, surveys, surveyor's notes, etc. This court may take judicial notice of these official documents. Only questions of law are presented.

Attached to this opinion is a drawing prepared by Whitney's counsel and accepted by Marks on appeal which illustrates and identifies various matters contained in the pleadings, exhibits, findings and judgment. [See p. 265, post.] This shows the location of the tidelands on the westerly side of Tomales Bay in Marin County, the disputed boundary line, the relative size of

the properties involved, and the location of the wharf. The portion of the tidelands adjoining Whitney's property is roughly rectangular in shape, has an average width of 100 feet, and extends 344.48 feet along the 430-foot shoreline of Whitney. There are no improvements other than the wharf on the tidelands.

Appearing as amici curiae on the appeal are: the Attorney General, on behalf of the State Lands Commission, the Bay Area Conservation and Development Commission (BCDC) and as chief law enforcement officer of the state;[1] Sierra Club;[2] and Westbay Community Associates.[3]

■ *Questions:* First. *Are these tidelands subject to the public trust; if so, should the judgment so declare?*

*Yes.* ■ Regardless of the issue of Whitney's standing to raise this issue the court may take judicial notice of public trust burdens in quieting title to tidelands. ■ This matter is of great public importance, particularly in view of population pressures, demands for recreational property, and the increasing development of seashore and waterfront property. A present declaration that the title of Marks in these tidelands is burdened with a public easement may avoid needless future litigation.[4]

■ Tidelands are properly those lands lying between the lines of mean

---

[1]California holds the state-wide public easement in tidelands and owns the submerged lands abutting the tidelands. The Legislature has vested in the State Lands Commission "All jurisdiction and authority remaining in the State as to tidelands and submerged lands as to which grants have been or may be made" and has given the commission exclusive administration and control of such lands. (Pub. Resources Code, § 6301.) BCDC is charged with specific duties concerning dredging and filling in San Francisco Bay (Gov. Code, §§ 66600-66610). The Attorney General is presently involved in litigation involving lands in San Francisco Bay which were patented under the Act of March 28, 1868, and other statutes. The Attorney General asks this court to declare the existence of the public easement and to recognize the right of Whitney as a member of the public and as a littoral owner to have the existence of the easement in these tidelands declared in this action.

[2]Sierra Club expresses the concern of its 60,000 members in public questions raised herein. It asks this court not only to declare that these lands are subject to the public easement and that Whitney has standing to raise this issue but asks this court to declare the scope and extent of the public servitude in areas of navigable waters over tidelands.

[3]Westbay Community Associates is also involved in San Francisco Bay Area litigation. It asks this court to limit its consideration of early patents to land situated on Tomales Bay and, because of the pending litigation, not to consider patents to lands situated on San Francisco Bay.

[4]There has been sufficient confusion already engendered in this lawsuit. After the first Court of Appeal opinion herein the Los Angeles Metropolitan News, Sept. 16, 1969, headlined its news release thereon "Patent Title to Tidelands Unrestricted." See also, critique by Professor Joseph L. Sax, *The Public Trust Doctrine in Natural Resource Law: Effective Judicial Intervention* (1970) 68 Mich.L.Rev. 473, 530-531.

high and low tide (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 478, fn. 13 [91 Cal.Rptr. 23, 476 P.2d 423]) covered and uncovered successively by the ebb and flow thereof (*People* v. *Kerber* (1908) 152 Cal. 731, 733 [93 P. 878]). The trial court found that the portion of Marks' lands here under consideration constitutes a part of the tidelands of Tomales Bay, that at all times it has been, and now is, subject to the daily ebb and flow of the tides in Tomales Bay, that the ordinary high tides in the bay overflow and submerge this portion of his lands, and that Tomales Bay is a navigable body of water and an arm of the Pacific Ocean.

This land was patented *as tidelands* to Marks' predecessor in title. The patent of May 15, 1874, recites that it was issued by the Governor of California "by virtue of authority in me vested" pursuant to "Statutes enacted from time to time" for the "Sale and Conveyance of the *Tide Lands belonging to the State by virtue of her sovereignty.*"[5] (Italics added.)

The governing statute was the act of March 28, 1868,[6] entitled "An Act to provide for the management and sale of the lands belonging to the State." By its terms it repealed all other laws relating to the sale of swamp and overflowed, salt-marsh and tidelands. These laws, including the Act of March 28, 1868, were codified in former Political Code sections 3440-3493½. They were explicitly and expansively considered by this court entirely separate from the restrictions contained in article 15, sections two and three, of the State Constitution (enacted in 1879)—in *Forestier* v. *Johnson* (1912) 164 Cal. 24, 30 [127 P. 156], and *People* v. *California Fish Co., supra,* 166 Cal. 576, 589-598. Prior to the issuance of this patent it was held that a patent to tidelands conveyed no title (*Kimball* v.

---

[5]California acquired title to the navigable waterways and tidelands by virtue of her sovereignty when admitted to the Union in 1850. (*Borax, Ltd.* v. *Los Angeles* (1935) 296 U.S. 10, 15-16 [80 L.Ed. 9, 13-14, 56 S.Ct. 23].) This title is different in character from that which the state holds in lands intended for sale. (*Illinois Cent. R.R.* v. *Illinois* (1892) 146 U.S. 387, 452 [36 L.Ed. 1018, 1042, 13 S.Ct. 110]; *Oakland* v. *Oakland Waterfront Co.* (1897) 118 Cal. 160, 208-209 [50 P. 277].) The state holds tidelands in trust for public purposes, traditionally delineated in terms of navigation, commerce and fisheries. (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 482.)

[6](Stats. 1867-1868, p. 507.) The Act of March 28, 1868, is distinguishable from the Act of March 30, 1868, and the amendatory Act of April 1, 1870. (Stats. 1867-1868, p. 716; Stats. 1869-1870, p. 541.) The latter were enacted in aid of navigation and for the purpose of providing for the improvement of designated parts of San Francisco Bay and they operated to free such tidelands from the public trust. (*Knudson* v. *Kearney* (1915) 171 Cal. 250, 252-253 [152 P. 541]; *Alameda Conservation Assn.* v. *City of Alameda* (1968) 264 Cal.App.2d 284, 287 [70 Cal.Rptr. 264].) Some of the cases upholding the authority of the state to make an absolute disposition of tidelands consistent with the public trust are reviewed in *People* v. *California Fish Co.* (1913) 166 Cal. 576, 585-586 [138 P. 79], and *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 483-486.

*MacPherson* (1873) 46 Cal. 103; *People* ex rel. *Pierce* v. *Morrill* (1864) 26 Cal. 336); or a voidable title (*Taylor* v. *Underhill* (1871) 40 Cal. 471). It was not until 1913 that this court decided in *People* v. *California Fish Co., supra,* 166 Cal. 576, 596, that "The only practicable theory is to hold that all tide land is included, but that the public right was not intended to be divested or affected by a sale of tide lands under these general laws relating alike both to swamp land and tide lands. Our opinion is that . . . the buyer of land under these statutes receives the title to the soil, the *jus privatum,* subject to the public right of navigation, and in subordination to the right of the state to take possession and use and improve it for that purpose, as it may deem necessary. In this way the public right will be preserved and the private right of the purchaser will be given as full effect as the public interests will permit."

The tidelands embraced in these statutes extend from the Oregon line to Mexico and include the shores of bays and navigable streams as far up as tide water goes and until it meets the lands made swampy by the overflow and seepage of fresh water streams. (*People* v. *California Fish Co., supra,* at pp. 591, 596.) No issue is here presented of swamp or overflowed lands. ■ These are true tidelands within the meaning of these statutes, the patent of May 15, 1874, and the public trust doctrine. They are, therefore, subject to a reserved easement in the state for trust purposes.

■ Public trust easements are traditionally defined in terms of navigation, commerce and fisheries. They have been held to include the right to fish, hunt, bathe, swim, to use for boating and general recreation purposes the navigable waters of the state, and to use the bottom of the navigable waters for anchoring, standing, or other purposes. (See *Bohn* v. *Albertson* (1951) 107 Cal.App.2d 738 [238 P.2d 128]; *Forestier* v. *Johnson, supra,* 164 Cal. 24; *Munninghoff* v. *Wisconsin Conservation Comm'n.* (1949) 255 Wis. 252 [38 N.W.2d 712]; *Jackvony* v. *Powel* (1941) 67 R.I. 218 [21 A.2d 554]; *Nelson* v. *De Long* (1942) 213 Minn. 425 [7 N.W.2d 342]; *Proctor* v. *Wells* (1869) 103 Mass. 216.) The public has the same rights in and to tidelands.

The public uses to which tidelands are subject are sufficiently flexible to encompass changing public needs. In administering the trust the state is not burdened with an outmoded classification favoring one mode of utilization over another. (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.,* 67 Cal.2d 408, 421-422 [62 Cal.Rptr. 401, 432 P.2d 3].) ■ There is a growing public recognition that one of the most important public uses of the tidelands — a use encompassed within the tidelands trust — is the preservation of those lands in their natural state, so that they may serve as ecological units for scientific study,

as open space, and as environments which provide food and habitat for birds and marine life, and which favorably affect the scenery and climate of the area. It is not necessary to here define precisely all the public uses which encumber tidelands.

■ "[T]he state in its proper administration of the trust may find it necessary or advisable to cut off certain tidelands from water access and render them useless for trust purposes. In such a case the state through the Legislature may find and determine that such lands are no longer useful for trust purposes and free them from the trust. When tidelands have been so freed from the trust—and if they are not subject to the constitutional prohibition forbidding alienation—they may be irrevocably conveyed into absolute private ownership." (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d 462, 482.)

■ The power of the state to control, regulate and utilize its navigable waterways and the lands lying beneath them, when acting within the terms of the trust, is absolute (*People* v. *California Fish Co., supra,* p. 597), except as limited by the paramount supervisory power of the federal government over navigable waters (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks., supra,* 67 Cal.2d at pp. 416-422). We are not here presented with any action by the state or the federal government modifying, terminating, altering or relinquishing the *jus publicum* in these tidelands or in the navigable water covering them. Neither sovereignty is a party to this action. ■ This court takes judicial notice, however, that there has been no official act of either sovereignty to modify or extinguish the public trust servitude upon Marks' tidelands. The State Attorney General, as amicus curiae, has advised this court that no such action or determination has been made by the state.

We are confronted with the issue, however, whether the trial court may restrain or bar a private party, namely, Whitney, "from claiming or asserting any estate, right, title, interest in or claim or lien upon" the tidelands quieted in Marks. ■ The injunction so made, without any limitation expressing the public servitude, is broad enough to prohibit Whitney from asserting or in any way exercising public trust uses in these tidelands and the navigable waters covering them in his capacity as a member of the public. This is beyond the jurisdiction of the court. It is within the province of the trier of fact to determine whether any particular use made or asserted by Whitney in or over these tidelands would constitute an infringement either upon the *jus privatum* of Marks or upon the *jus publicum* of the people. It is also within the province of the trier of fact to determine whether any particular use to which Marks wishes to devote his tidelands constitutes an unlawful infringement upon the *jus publicum* therein. ■ It is a political question, within the wisdom and power of the Legis-

lature, acting within the scope of its duties as trustee, to determine whether public trust uses should be modified or extinguished (see *City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at p. 482, fn. 17), and to take the necessary steps to free them from such burden. ▮ In the absence of state or federal action the court may not bar members of the public from lawfully asserting or exercising public trust rights on these privately owned tidelands.

There is absolutely no merit in Marks' contention that as the owner of the *jus privatum* under this patent he may fill and develop his property, whether for navigational purposes or not; nor in his contention that his past and present plan for development of these tidelands as a marina have caused the extinguishment of the public easement. ▮ Reclamation with or without prior authorization from the state does not ipso facto terminate the public trust nor render the issue moot. (*Newcomb* v. *City of Newport Beach* (1936) 7 Cal.2d 393, 402 [60 P.2d 825]; *Atwood* v. *Hammond* (1935) 4 Cal.2d 31, 40-41 [48 P.2d 20].)

▮ A proper judgment for a patentee of tidelands was determined by this court in *People* v. *California Fish Co., supra,* 166 Cal. at pp. 598-599, to be that he owns "the soil, subject to the easement of the public for the public uses of navigation and commerce, and to the right of the state, as administrator and controller of these public uses and the public trust thereof, to enter upon and possess the same for the preservation and advancement of the public uses and to make such changes and improvements as may be deemed advisable for those purposes."

▮ Second: *Does Whitney have "standing" to request the court to recognize and declare the public trust easement on Marks' tidelands?*

*Yes.* The relief sought by Marks resulted in taking away from Whitney rights to which he is entitled as a member of the general public. It is immaterial that Marks asserted he was not seeking to enjoin the public. The decree as rendered does enjoin a member of the public.

Members of the public have been permitted *to bring* an action to enforce a public right to use a beach access route (*Gion* v. *City of Santa Cruz* (1970) 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50]); *to bring* an action to quiet title to private and public easements in a public beach (*Morse* v. *E. A. Robey & Co.* (1963) 214 Cal.App.2d 464 [29 Cal.Rptr. 734]); and *to bring* an action to restrain improper filling of a bay and secure a general declaration of the rights of the people to the waterways and wildlife areas of the bay (*Alameda Conservation Association* v. *State of Cal.* (9th Cir. 1971) 437 F.2d 1087, 1095-1098). Members of the public have been al-

lowed *to defend* a quiet title action by asserting the right to use a public right of way through private property (*Diamond Match Co. v. Savercool* (1933) 218 Cal. 665 [24 P.2d 783]). They have been allowed to assert the public trust easement for hunting, fishing and navigation in privately owned tidelands *as a defense* in an action to enjoin such use (*Forestier v. Johnson, supra,* 164 Cal. 24), and to navigate on shallow navigable waters in small boats (*Bohn v. Albertson* (1951) 107 Cal.App.2d 738 [238 P.2d 128]).

Whitney had standing to raise this issue. ■■■ The court could have raised this issue on its own. ■■■ "It is now well settled that the court may finally determine as between the parties in a quiet title action all of the conflicting claims regarding any estate or interest in the property." (*Hendershott v. Shipman* (1951) 37 Cal.2d 190, 194 [231 P.2d 481].) Where the interest concerned is one that, as here, constitutes a public burden upon land to which title is quieted, and affects the defendant as a member of the public, that servitude should be explicitly declared.

Third: *Does Whitney have rights as a littoral owner which are improperly enjoined by the judgment appealed from?*

*Yes.* In its memorandum opinion the trial court expressed its views as to the private rights between these parties. It stated that it would find and adjudge that the littoral owner does not own a private right of access or fishery across all of the tidelands adjoining his property; that, however, he may own a reasonable right of access; that here it would be found that he had exercised such right and his right of access is therefore confined to the wharf area; and that as between Marks and Whitney this has ripened into an easement in that specific area only. The judgment quieted an easement by prescription in Whitney as against Marks "for access and ingress and egress to and from the deep water of Tomales Bay for pedestrians, fisheries, navigation and other purposes. Such right shall be subject to the right of MARKS to use, to fill and to develop . . . (including those within the above defined area seven feet in width), so long as such rights of access . . . shall be preserved over and across said area seven feet in width and MARKS may use and convey the same for use, for all purposes which do not defeat or substantially interfere with use by WHITNEY of such area for the above stated purposes."

■■■ A littoral owner has a right in the foreshore adjacent to his property separate and distinct from that of the general public (Gould on Waters, (3d ed.) § 149). This is a property right and is valuable, and although it must be enjoyed in due subjection to the rights of the public, it cannot be

arbitrarily or capriciously destroyed. (*Yates* v. *Milwaukee* (1870) 77 U.S. (10 Wall.) 497, 504 [19 L.Ed. 984, 986].) ■ A littoral owner can enjoin as a nuisance interference by a private person with this right. (*S. F. Sav. Union* v. *R. G. R. Petroleum Co.* (1904) 144 Cal. 134, 135-139 [77 P. 823].) A littoral owner has been held to have the right to build a pier out to the line of navigability; a right to accretion;[7] a right to navigation (the latter right being held in common with the general public) (see 65 C.J.S. Navigable Waters, § § 61-69; 56 Am. Jur. Waters, § 233); and a right of access from every part of his frontage across the foreshore (see Coulson & Forbes on Waters (6th ed. 1952) pp. 69-70). ■ This right of access extends to ordinary low tide both when the tide is in and when the tide is out. (*S.F. Sav. Union* v. *R. G. R. Petroleum Co., supra,* 144 Cal. 134.)

■ This littoral right is of course burdened with a servitude in favor of the state in the exercise of its trust powers over navigable waters (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks., supra,* 67 Cal.2d 408, 420; *City of Newport Beach* v. *Fager* (1940) 39 Cal.App.2d 23 [102 P.2d 438]). ■ The state has not exercised its power in this instance. The effect of this judgment is to limit Whitney's right to bathe, sunbathe, fish, etc., to the pier area of the tidelands, to restrict his *lateral* use of the pier for boating, etc., and to debar him from the use of any part of his 344-foot frontage along these tidelands except for the 7-foot wide pier area.

The quieting of a prescriptive easement in Whitney without a determination in the decree as to the effect thereof on the public rights in these tidelands, creates further confusion both as to the nature of Whitney's rights as littoral owner, apart from prescription, and as to the rights of the public.

While the authority given Marks "to use, to fill and to develop" the tidelands, except as limited by the wharf easement, was not intended by the trial court to place any limitation upon the state or federal government, in the absence of a declaration of the rights of the public or of the state as trustee it is subject to misinterpretation, i.e., as giving a blanket and otherwise unqualified authorization to Marks to fill and develop.

Fourth: *Does the failure of the court to include the words "along the line of ordinary low water" in the metes and bounds description of the seaward boundary of the tidelands indicate that such line is fixed in location?*

*No.* However, Whitney has no standing to complain of this omission.

---

[7] The judgment herein does not affect Whitney's right to accretion.

As a littoral owner, as a member of the public entitled to exercise certain rights, and as the owner of a wharf easement, he can assert rights in and over the tidelands but only to the line of ordinary low water. The *seaward* boundary of the tidelands is not a common boundary as to him. The judgment in question omits the description of the natural monument "along the line of ordinary low water" but otherwise describes the courses and distances in almost identical[8] language with the descriptions contained in the original patent and in the official surveys.

The courses and distances as given constitute a meander line which, for surveying convenience, depicts the line of ordinary low water. ▮ Where a meander line is used, the actual location of the line of ordinary low water and not the calls is controlling. (*de Watson* v. *San Pedro, etc. R. R. Co.* (1915) 169 Cal. 520, 521 [147 P. 140]; *People* v. *Ward Redwood Co.* (1964) 225 Cal.App.2d 385, 389 [37 Cal.Rptr. 397]; *Den* v. *Spalding* (1940) 39 Cal.App.2d 623, 627 [104 P.2d 81]; *McLeod* v. *Reyes* (1935) 4 Cal.App.2d 143, 154 [40 P.2d 839].)

The retention of the words "along the line of ordinary low water" in the description in the decree would have been more explicit and would have avoided some of the problems encountered on the appeal. The failure to include these words however does not refute the fact that the judgment describes a natural monument, i.e., "the line of ordinary low water."

The seaward boundary is a common boundary line as between Marks and the state, owner of the adjoining submerged lands. Section 6463 of the Public Resources Code authorizes any person claiming title under a patent of tideland issued by the state to bring suit against the state, or against the state with others, to quiet title or otherwise determine the validity of such patent or establish boundaries. Section 6357 authorizes the State Lands Commission to establish ordinary low-water mark or ordinary high-water mark by agreement, arbitration or action to quiet title whenever it is deemed expedient or necessary. The state was not made a party hereto and no action has been taken by the State Lands Commission to change the seaward boundary of these tidelands from the description given in the original patent. Should there be any dispute as to where the actual line of low water lies which would make uncertain spatial limitations on the exercise by members of the public or littoral owners of rights across these tidelands, the commission has jurisdiction to take the necessary steps to define such limits and protect such rights, or litigation could be brought pursuant to section 6463 of the Public Resources Code.

---

[8]The description by "chains" was converted into "feet" by the trial court.

Judgment is reversed and remanded for proceedings not inconsistent with this opinion.

Wright, C. J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.