UNITED STATES of America, Plaintiff,

v.

11.037 ACRES OF LAND, etc., Defendants.

No. C–83–4605–JPV.

United States District Court, N.D. California.

March 21, 1988.

Paul E. Locke, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Patricia Sheehan Peterson, Deputy Atty. Gen., State of Cal., San Francisco, Cal., for defendants.

OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

VUKASIN, District Judge.

## BACKGROUND

The facts in the present case are relatively simple and substantially undisputed. The State of California acquired the lands that are the subject matter of this suit as an attribute of sovereignty when it was admitted to the Union in 1850. As tidelands, certain restrictions attached to these lands pursuant to the Public Trust Doctrine (*see infra*). This property was subsequently conveyed in trust to the City of Oakland for administration as a port. The lands were tidal and submerged in 1850;

however, they have since been filled in and no longer remain tidal.

The United States filed a Complaint in Condemnation and Declaration of Taking against this property pursuant to 40 U.S.C. § 258a on September 29, 1983. On March 30, 1987, the United States filed its First Amendment to the Complaint in Condemnation and the First Amendment to the Declaration of Taking. The estate condemned and taken by the United States in this proceeding was the fee simple title subject only to the existing subsurface easement of the San Francisco Bay Area Rapid Transit District and to existing easements for public roads, highways, public utilities, railroads, and pipelines.

The State of California *ex rel* the State Lands Commission filed its Answer to the First Amendment to the Complaint in Condemnation on April 21, 1987, in which the State alleged, *inter alia*, that the lands subject to condemnation in this action are sovereign tidelands and submerged lands, and that the lands are held subject to the public trust of the State of California. The Answer alleges that the United States in condemning the lands may only take them subject to the public trust easement of the State.

The United States has filed a motion for summary judgment contending that, by the taking of the fee simple title in the condemnation proceeding, it extinguished the public trust easement of the State of California. The State of California has filed a cross-motion for summary judgment, contending that, while the United States may condemn fee title, the lands will remain impressed with the public trust easement.

## DISCUSSION

### 1. Introduction

Based upon the pleadings and declarations filed herein, there is no substantial dispute as to the material facts. There is no denial by either party that the property in question was at one time tidal and submerged lands and that at the time of the taking the lands were filled. The issue presented may be resolved as a matter of law and is appropriate for summary adjudication.

### 2. Public Trust Doctrine

Public trust theory has its roots in the Roman and common law. Historically, lands that were covered by water at high tide were incapable of ordinary and private occupation, cultivation, and improvement. As the United States Supreme Court has stated,

> their natural and primary uses are public in nature, for highways of navigation and commerce, domestic and foreign, and for the purposes of fishing by all the king's subjects. Therefore the title, jus privatum, in such lands, as of waste and unoccupied lands, belongs to the king, as the sovereign; and the dominion thereof, jus publicum, is vested in him, as the representative of the nation and for the public benefit.

*Shively v. Bowlby*, 152 U.S. 1, 11, 14 S.Ct. 548, 551–52, 38 L.Ed. 331 (1894).

In this country, title to lands subject to the public trust was passed to the States as the sovereign successors to the English Crown. *Utah Division of State Lands v. United States*, — U.S. —, 107 S.Ct. 2318, 2320, 96 L.Ed.2d 162 (1987). In 1892, the United States Supreme Court explained the status of the doctrine as follows:

> It is settled law of this country that the ownership of and dominion and sovereignty over lands covered by tide waters, within the limits of several States, belong to the respective States within which they are found, with the consequence right to use or dispose of any portion thereof when that can be done without substantial impairment of the interest of the public in the waters, and subject always to the paramount right of Congress to control their navigation so far as may be necessary for the regulation of commerce with foreign nations and among the States.

*Illinois Central Railroad v. Illinois*, 146 U.S. 387, 435, 13 S.Ct. 110, 111, 36 L.Ed. 1018 (1892).

■ When California attained statehood in 1850, it acquired title to the State's tide-

lands as an incident of its sovereignty. *Borax Consolidated v. City of Los Angeles,* 296 U.S. 10, 15–16, 56 S.Ct. 23, 25–26, 80 L.Ed. 9 (1935). Even after the State has conveyed tidal lands to private parties, however, the public retains the right to use the land for navigation, commerce, and fishing. The California Supreme Court has held that

> [t]he only practicable theory is to hold that all tideland is included [in state laws permitting sale of State lands], but that the public right was not intended to be divested or affected by the sale of tidelands under these general laws relating alike to swamp land and tide lands. Our opinion is that ... the buyer of the land under these statutes receives the title to the soil, the *jus privatum,* subject to the public right of navigation, and in subordination to the right of the state to take possession and use and improve it for that purpose, as it may deem necessary. In this way, the public right will be preserved, and the private right of the purchaser will be given as full effect as the public interests will permit.

*People v. California Fish Co.,* 166 Cal. 576, 596, 138 P. 79 (1913); *see also Marks v. Whitney,* 6 Cal.3d 251, 259, 98 Cal.Rptr. 790, 491 P.2d 374 (1971). Thus, any private owner of tidelands that obtained them from the State holds them subject to public use restrictions.

### 3. The Nature of the Lands in Question

The United States first contends that the issue of whether it must take the lands subject to the public trust is moot as to this case because the lands in question in this case were filled at the time of condemnation. Thus, the United States argues, because the lands were no longer subject to tidal action when they were condemned, they were not subject to the State's public trust easement.

This argument must be rejected. It is undisputed that these lands lay between high and low tide at the time California became a State. In *City of Long Beach v. Mansell,* 3 Cal.3d 462, 91 Cal.Rptr. 23, 476 P.2d 423 (1970), the California Supreme Court held that lands subject to the action

of the tides (in 1850) remain tidelands for purposes of the public trust restrictions even after they have been filled. *Id.* at 486–87, 91 Cal.Rptr. 23, 476 P.2d 423. The court emphasized that only the State Legislature may free tidelands from the public trust. *See also Marks v. Whitney,* 6 Cal. 3d 251, 261, 98 Cal.Rptr. 790, 491 P.2d 374 (1971) ("[r]eclamation with or without prior authorization from the state does not *ipso facto* terminate the public trust ...").

In the case at bar, it is undisputed that the California Legislature has never freed these lands from the public trust. The subsequent filling of the lands does not change this fact. Thus, at the time of condemnation, the lands remained subject to the public trust. The United States' reliance on *City of Berkeley v. Superior Court,* 26 Cal.3d 515, 162 Cal.Rptr. 327, 606 P.2d 362 (1980), is misplaced and should be limited to the facts of that case.

### 4. Whether the United States' Condemnation Extinguishes the State of California's Public Trust Easement

The crucial issue in this case is whether the United States' condemnation of the 11.037 acres of land extinguishes the State of California's public trust easement in the lands. Because this Court finds that the United States' power of eminent domain is supreme to the State's power to maintain tidal lands for the public trust, the Court concludes that the United States' condemnation of these lands extinguishes the State's public trust easement.

The exercise of eminent domain is a proceeding *in rem. Duckett & Co. v. United States,* 266 U.S. 149, 45 S.Ct. 38, 69 L.Ed. 216 (1924). The significance of the *in rem* proceeding is that it permits the United States to take *all* interests in the property. *Id.* In the words of Justice Oliver Wendall Holmes, "[i]f there is such a thing as a new title known to the law, one founded upon the taking by the right of eminent domain is as clear an example as can be found." *Emery v. Boston Terminal Co.,* 178 Mass. 172, 184, 59 N.E. 763, 765 (1901). Thus, all easements and other interests, whether legal or equitable, are

extinguished, unless the United States permits otherwise. *See United States v. 3276.21 Acres of Land, Etc.*, 194 F.Supp. 297, 300 (S.D.Cal.1961). The public trust easement held by the State of California is no exception to this rule.

The State of California's argument that the public trust is an attribute of sovereignty upon which the United States may not infringe is of little force. Indeed, *title* to the tidelands itself is an attribute of state sovereignty. *See Pollard's Lessee v. Hagan*, 44 U.S. (3 How.) 212, 11 L.Ed. 565 (1845); *see also Oregon ex rel State Land Board v. Corvallis Sand and Gravel Co.*, 429 U.S. 363, 372–79, 97 S.Ct. 582, 588–91, 50 L.Ed.2d 550 (1977). It is undisputed that the United States may take *title* to these tidelands through eminent domain proceedings. No reason exists for treating the "public trust attribute" of sovereignty different than the "title attribute."

The power of eminent domain is essential to a sovereign government. *United States v. Carmack*, 329 U.S. 230, 236, 67 S.Ct. 252, 254, 91 L.Ed. 209 (1946). The State may not frustrate that power, nor limit it. U.S. Const. art. 6, cl. 2 (the Supremacy Clause). Should this Court impress the California public trust easement on the lands acquired by the United States, the federal government's power of eminent domain would become subjugated to the interests of the State. This the Court may not do.

As the United States Supreme Court stated in *Pollard's Lessee, supra*, 44 U.S. (3 How.) at 228–29,

> [w]hen the Revolution took place, the people of each state became themselves sovereign; and in that character hold the absolute right to all their navigable waters, and the soils under them for their own common use, *subject only to the rights since surrendered by the Constitution....* This right of eminent domain over the shores and the soils under the navigable waters, for all municipal purposes, belongs exclusively to the states within their respective jurisdictions, and they, and they only, have the constitutional power to exercise it.... *But in the hands of the states this power can never be used so as to affect the exercise of any national right of eminent domain or jurisdiction which the United States has been invested by the Constitution.*

(emphasis added).

The Court is aware that at least one other district court has held under similar circumstances that, in an eminent domain proceeding, the United States takes such lands subject to the public trust easement of the State. *See, e.g., United States v. 1.58 Acres of Land, Etc.*, 523 F.Supp. 120 (D.Mass.1981). Because this Court believes it is bound by the Supremacy Clause of the United States Constitution to hold otherwise, however, it respectfully declines to follow that court's ruling.

It is therefore the ruling of this Court that the public trust easement in the formerly tidal and submerged lands held by the State of California was extinguished upon the filing of the Declaration of Taking and amendment thereto, and that the condemned estate vested in the United States.

### ORDER

Accordingly, IT IS HEREBY ORDERED that plaintiff United States' motion for summary judgment is GRANTED. Defendant State of California's cross-motion for summary judgment is DENIED.