Filed 1/29/25; certified for publication 2/25/25 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW V. HERRON, Plaintiff and Appellant, v. SAN DIEGO UNIFIED PORT DISTRICT et al. Defendants and Respondents. | D083668 (Super. Ct. No. 37-2023-00007819-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Matthew C. Braner, Judge.  Affirmed.

Matthew V. Herron, in pro. per., for Plaintiff and Appellant.

Klinedinst, Greg A. Garbacz, Carey L. Cooper and Theodore S. Wolter, for Defendants and Respondents.

Matthew V. Herron appeals from a judgment following the sustaining of a demurrer without leave to amend on his petition for writ of mandate.  In the petition, Herron asserts the San Diego Unified Port District (the Port District) and the Coronado Yacht Club (collectively, Respondents), have breached and continue to breach the public trust doctrine by leasing coastal public trust land for the purpose of operating a private club, in violation of

the San Diego Unified Port Act (Harb. & Nav. Code, appen. I, § 1)[1] (the Act), the Public Resources Code, and the Port's Master Plan.  In granting the demurrer, the trial court concluded that it did not have jurisdiction to interfere with the Port District's broad discretion over such matters on a writ for traditional mandamus, and that the time had run for a writ for administrative mandamus.  Finding no error, we affirm the trial court's judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

Herron filed the underlying petition for writ of mandate in February 2023 and alleged as follows:  the Port District holds and administers certain tide and submerged lands, including the land occupied by the Coronado Yacht Club (the Public Trust Property) pursuant to a conveyance from the City of Coronado governed by the Act.  Section 87 provides that the lands "may be used for purposes in which there is a general statewide purpose," and sets forth a list of such purposes.  The list does not include private yacht clubs that are not open to the public.  The Port District is also subject to certain fiduciary duties imposed by Public Resources Code sections 6009 and 6009.1.  The Port District breached these duties by leasing the Public Trust Property to the Coronado Yacht Club, without notice to the public and without soliciting competing bids.  The Port District also "violated its own Master Plan and the principles enumerated in the 2014 Vision Statement 3 and Guiding Principles (hereinafter 'Vision Statement')."

Based on these allegations, Herron asked the trial court to "order the Port District to fully comply with its procedures for soliciting bids for operators to manage the Public Trust Property, for the benefit of the public at

---

[1]     Further unspecified statutory references are to Harbors and Navigation Code, appendix I.

large, and not as a private club, and to award the lease to the qualified applicant who will operate the Public Trust Property, for the benefit of the public at large, in compliance with the Act, Code, common law principles and the Port's Master Plan and Vision Statement."

Respondents demurred. They asserted the Port District exercised the authority the Legislature granted it in executing the lease; the lease was within the scope of uses authorized by the Legislature and in alignment with the Port's Vision Statement; the Port was not required to solicit public bids before executing the lease; and the trial court lacked jurisdiction to grant a writ of traditional mandamus in response to a discretionary action of the Port District undertaking pursuant to its quasi-legislative authority.

The trial court issued a written decision sustaining the demurrer without leave to amend. The trial court found the petition sounded in traditional mandamus; that Herron could not bring an action for administrative mandamus as a matter of law because the time to do so had passed; and that Herron could not state a claim for traditional mandamus because the Port District's decision to lease the land to the Coronado Yacht Club necessarily involved the exercise of discretion by a state agency.

On November 15, 2023, the trial court issued a judgment dismissing the petition with prejudice. Herron filed a timely notice of appeal.

## DISCUSSION

Herron asserts the trial court's ruling was legally erroneous, and that the trial court should have reached the merits of his petition.

### A. *Standard of Review*

A party may file a demurrer asserting the "court has no jurisdiction of the subject of the cause of action alleged," or the "pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc. § 430.10,

3

subds. (a) & (e).)  "Although the statutes make no express provision for a demurrer in a mandamus proceeding, it is settled that the sufficiency of the petition can be tested . . . by demurrer." (*Gong v. City of Fremont* (1967) 250 Cal.App.2d 568, 571 (*Gong*).)

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.' [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Here, Respondents' primary contention, in their demurrer and on appeal, is that the trial court did not have jurisdiction to grant the relief Herron requested, because the lease is not prohibited by law and therefore is not subject to a writ of traditional mandamus.  Instead, the discretionary act of the Port District in entering the lease was subject to a writ for administrative mandamus, which had to be filed within 90 days of the

4

finalization of the lease.  A "writ of mandate is available either to compel the performance of a ministerial act which the law specially enjoins (a remedy commonly called 'traditional mandamus,' Code Civ. Proc. § 1085) or to inquire into the validity of some kinds of quasi-judicial actions of administrative agencies (commonly called 'administrative mandamus,' Code Civ. Proc. § 1094.5)." (*Gong, supra,* 250 Cal.App.2d at pp. 571–572.)  A demurrer should be sustained if, accepting the facts as alleged, the petitioner is not entitled to relief on either theory.  (*Id.* at p. 572.)  We must therefore consider whether Herron is entitled to relief under either theory.

## B.  *Herron Cannot Establish a Claim for Traditional Mandamus*

"The San Diego Bay Area is divided into a number of separate cities, viz.:  San Diego, Chula Vista, Coronado, National City and Imperial Beach. Each of these cities borders upon the Pacific Ocean or San Diego Bay." (*City of Coronado v. San Diego Unified Port Dist.* (1964) 227 Cal.App.2d 455, 462 (*Coronado*).)  "In 1923 the State of California conveyed to the City of Coronado its right, title and interest in certain tide and submerged lands situated within the city's boundaries 'to be forever held by said city of Coronado in trust' for purposes of navigation, commerce and fisheries.  (Stats. 1923, ch. 49.)" (*Id.* at pp. 468–469.)

"Prior to 1962, all [cities along the San Diego Bay] but Imperial Beach were acting as trustees of state tidelands within or adjacent to their borders which had been granted to them in trust by the State of California." (*Coronado, supra,* 227 Cal.App.2d at p. 462.)  "Thus, prior to 1962, any program for the common development of the bay area port and harbor facilities and adjacent tidelands would have been impossible without the coordinated action of each of the separate municipalities.  The California

5

Legislature enacted the . . . Act in order to solve this problem." (*Ibid*.; see also § 2.)

In the Act, the Legislature created the Port District to manage and control "the tidelands and lands lying under the inland navigable waters of San Diego Bay." (§ 4; see also *Graf v. San Diego Unified Port Dist.* (1992) 7 Cal.App.4th 1224, 1229.) The Legislature declared that "title and interest in and to the tidelands and submerged lands . . . shall reside in the [Port] district, and the [Port] district shall hold such lands in trust for the uses and purposes and upon the conditions which are declared in [the Act]," and generally authorized the Port to "lease and dispose of real and personal property of every kind, within the district, necessary to the full or convenient exercise of its powers." (§§ 14, 25.)

The Legislature further specified, "The tide and submerged lands conveyed to the [Port] district by any city included in the district shall be held by the [Port] district and its successors in trust and may be used for purposes in which there is a general statewide purpose." (§ 87, subd, (a).) The enumerated authorized uses expressly include, without limitation, "the construction . . . and operation of public buildings, public assembly and meeting places, convention centers, parks, playgrounds, bathhouses and bathing facilities, recreation and fishing piers, public recreation facilities, including, but not limited to, public golf courses, and for all works, buildings, facilities, utilities, structures, and appliances incidental, necessary, or convenient for the promotion and accommodation of any of those uses," and "the establishment, improvement, and conduct of small boat harbors, marinas . . . launching ramps, . . . hoists, . . . boat repair facilities with cranes and marine ways . . . [and] yacht club buildings." (§ 87, subd., (a)(5) & (6).)

To that end, the Legislature also clarified that the Port District "may grant franchises thereon for limited periods, not exceeding 66 years, for wharves and other public uses and purposes, and may lease those lands, or any part thereof, for limited periods, not exceeding 66 years, for purposes consistent with the trusts upon which those lands are held by the State of California, and with the requirements of commerce and navigation, and collect and retain rents and other revenues from those leases, franchises, and privileges. *Those lease or leases, franchises, and privileges may be for any and all purposes that do not interfere with commerce and navigation.*" (§ 87, subd. (b), italics added.) Notably, none of these provisions specify that the leases, or the harbors, marinas, hoists, repair facilities and/or yacht club buildings constructed on land leased by the Port District, must always be open to the public.

More recently, in 2010, the Legislature amended the Public Resources Code to add section 6009, concerning public lands. (Pub. Resources Code § 6009, enacted by Stats. 2010, ch. 330, § 3, Senate Bill No. 1350 (2009–2010 Reg. Sess.).) The Legislature noted, "The addition of Section 6009 to the Public Resources Code by Section 3 of this act does not constitute a change in, but is declaratory of, existing law." (Senate Bill No. 1350, § 4.) As relevant here, Public Resources Code section 6009, subdivision (c) provides, "Tidelands and submerged lands granted by the Legislature to local entities remain subject to the public trust, and remain subject to the oversight authority of the state by and through the State Lands Commission." Public Resources Code section 6009, subdivision (d) provides further, "Grantees [i.e., the Port District] are required to manage the state's tidelands and submerged lands consistent with the terms and obligations of their grants and the public trust,

without subjugation of statewide interests, concerns, or benefits to the inclination of local or municipal affairs, initiatives, or excises."

In the underlying petition, Herron asserts, in rather conclusory fashion, that the Port District breached its duties under the Act, the Public Resources Code, and the common law of public trusts by entering the lease with the Coronado Yacht club. The trial court concluded Herron had not stated a claim for traditional mandamus because the Port District's authority to enter into the lease was a discretionary decision, made pursuant to the quasi-legislative authority granted to the Port District under the Act. Thus, any intervention by the court was limited to judicial review of that discretionary decision through a petition for writ of administrative mandamus.

On appeal, Herron asserts, again in somewhat conclusory fashion, that the trial court erred in determining it did not have the authority to resolve his claims. In doing so, he seems to overlook the basis of the trial court's decision. The trial court did not hold that it could never review an administrative decision of the Port District in entering a lease with a private party. It simply held that it could not conduct such a review *in the context of a writ of traditional mandamus*, and, as discussed *post*, that his petition was not timely if construed as a petition for administrative mandamus. On our own independent review, we agree with the trial court's conclusion.

As noted, a traditional writ of mandate lies "to compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085, subd. (a).) To obtain relief, the petitioner must establish the existence of a public officer's or a public entity's " 'clear, present, and ministerial duty where the petitioner has a beneficial right to performance of that duty.' " (*Crestwood Behavioral Health, Inc. v.*

8

*Baass* (2023) 91 Cal.App.5th 1, 15.) " 'A ministerial act is one that a public functionary " ' "is required to perform in a prescribed manner in obedience to the mandate of legal authority," ' " without regard to his or her own judgment or opinion concerning the propriety of such act.' " (*Monterey Coastkeeper v. Central Regional Water Quality Control Bd.* (2022) 76 Cal.App.5th 1, 19 (*Coastkeeper*).) Herron has not established the existence of a ministerial duty here, and thus has not established a claim for traditional mandamus.

In his petition, Herron asserts the Port District had a duty to manage the Public Trust Land in a manner consistent with the public trust doctrine. "The public trust doctrine necessarily involves the exercise of discretion by state agencies. '[T]he state is free to choose between public trust uses and that selecting one trust use "in preference to . . . [an]other cannot reasonably be said to be an abuse of . . . discretion.' " (*Coastkeeper, supra,* 76 Cal.App.5th at p. 21.) Notably, Herron does not allege that the Port District did not consider the public trust. To the extent the Port District chose one use over another, that was a discretionary choice, not a ministerial duty.

Herron nevertheless asserts the lease is subject to judicial review because it necessarily violated the public trust and/or the Port District's authority under the Act and the Public Resources Code. He asserts further that those authorities "do not allow for [a] private club's use, which excludes the public." To the contrary, the Act expressly allows the Port District to lease the land "*for any and all purposes that do not interfere with commerce and navigation.*" (§ 87, subd. (b), italics added.) The specifically enumerated "general statewide purpose," include such things as harbors, marinas, hoists, and repair facilities, among others. (§ 87, subd, (a)(6).) These types of facilities generally are not open to the public, and are instead restricted to

boat owners and employees, for security reasons. The Act does not state that such facilities must be completely open to the public, nor does Herron point to any authority stating that all Public Trust Lands, or any lands managed under the Act or the Public Resources Code, must be always accessible to the public. Because he cannot establish a legal requirement that the Port District only allow purely public use of the land, he cannot establish the existence of a ministerial duty relevant to his claims.

Moreover, Respondents provided a copy of the lease in support of their demurrer, and the trial court took judicial notice of the lease. The lease specifies that the premises shall be used "exclusively for a non-profit private yacht club of approximately 264 slips, ancillary dry boat storage and launching; club rentals including lockers and shed rentals; . . . youth and adult educational and social programs (including programs available to the public); for charitable and community events including regattas, fund raisers, banquets, receptions, private parties, meetings, luncheons, conferences, and seminars; and for the promotion of San Diego Bay and surrounding waters and the navigation thereof through such activities as international recreational activities such as aquatic sports including sailing, fishing, cruising, regattas, and other boating-related events." On its face, the lease does allow for some public use of the underlying land and facilities and appears to be consistent with the enumerated general statewide purposes set forth in the Act. To the extent Herron seeks review of the Port District's decision of entering the lease over other available opportunities, that is a

discretionary decision. Herron presents no legal authority establishing that doing so was a ministerial act subject to a writ of traditional mandamus.[2]

The cases Herron relies upon do not compel a different result. He asserts the courts routinely address claims based on the public trust doctrine but fails to acknowledge the different procedural postures under which the courts addressed the claims in the cases he relies upon. For example, in *Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, the plaintiffs filed a petition for writ of administrative mandate alleging the City of Palm Springs violated the Vehicle Code, the Palm Springs Municipal Code, and the California Environmental Quality Act (CEQA) by closing a portion of a public street. (*Id.* at pp. 615, 620.) There was no contention there, as there is here, that the request for administrative mandate was untimely.

In *Berkeley v. Superior Court* (1980) 26 Cal.3d 515, the plaintiffs brought an action for quiet title against the City of Berkeley, claiming that they owned certain lands, free of the public trust. (*Id.* at pp. 518–519; see also *Citizens for East Shore Parks v. State Lands Com.* (2011) 202 Cal.App.4th 549, 557 [addressing timely filed writ of administrative mandate claiming lease violated CEQA and public trust doctrine]; *Marks v. Whitney* (1971) 6 Cal.3d 251, 256 ["quiet title action to settle a boundary line dispute caused by overlapping and defective surveys" in which plaintiff also asserted rights as a member of the public in tidelands].)

In *National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, the plaintiffs filed a complaint seeking declaratory and injunctive relief concerning the allocation of the waters of the Mono Basin. (*Id.* at pp. 431,

---

[2] As noted, the petition also asserts the Port violated its own Vision Statement but Herron does not develop this assertion on appeal. We have reviewed the Vision Statement and find no apparent facial violation.

452.) After a series of transfers, the trial court entered summary judgment against the plaintiffs. The plaintiffs then filed a petition for writ of mandate directly with the California Supreme Court, seeking review of the trial court's decision and, primarily, the legal question of whether the Water Board had to consider the public trust doctrine in making allocation decisions. (*Id*. at p. 433.) Here, by contrast, Herron does not allege here that the Port District failed to consider the public trust, and instead asserts the lease violated the public trust as a matter of law. As we have explained, the law does not prohibit any lease that permits the exclusion of some members of the general public for at least some portion of time. Thus, the allegations in the petition are not sufficient to establish a claim for traditional mandamus. (See Code Civ. Proc. § 1085, subd. (a).)

Based on the foregoing, we conclude Herron has not set forth sufficient allegations to establish a claim for relief in the form of a petition for writ of traditional mandamus. Rather, because the Port District's action in entering the lease with the Coronado Yacht Club was a discretionary exercise of its quasi-judicial authority, Herron's claims can only be considered pursuant to a petition for writ of administrative mandamus. But, as we explain next, Herron has not filed a timely claim for administrative mandamus.[3]

## C. *Herron Cannot Establish a Claim for Administrative Mandamus*

Code of Civil Procedure section 1094.5, subdivision (a) permits a writ "for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the

---

[3] Herron argues administrative mandamus is not the exclusive remedy to resolve claims regarding the use of public trust property. Nothing herein is intended to suggest that it is. Rather, we conclude that Herron has not adequately plead any other cognizable claim in this action.

12

determination of facts is vested in the inferior tribunal, corporation, board, or officer . . . ." "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc. § 1094.5. subd. (b).)

Thus, to the extent Herron seeks judicial review of the discretionary decision of the Port District to enter the lease with the Coronado Yacht Club, it appears he could have brought the claim in a petition for writ of administrative mandamus. A writ of administrative mandamus would permit the trial court to review whether the Port District abused its discretion in considering public trust principles, as Herron asserts. But such claims must be brought in a timely manner, "not later than the 90th day following the date on which the decision becomes final," as set forth in Code of Civil Procedure section 1094.6, subdivision (b).

Here, the trial court found that Herron failed to bring a timely claim for administrative mandamus. We agree. The lease became final on January 1, 2019, and Herron did not file the writ petition until over four years later in February 2023. Although Herron generally asserts that the Port District's action should not be insulated from judicial review, he does not dispute the trial court's finding that his petition was not filed within 90 days of the final lease decision, and thus, any claim for administrative mandate was untimely in this case.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

13

KELETY, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MATTHEW V. HERRON, Plaintiff and Appellant, v. SAN DIEGO UNIFIED PORT DISTRICT et al. Defendants and Respondents. | D083668 (Super. Ct. No. 37-2023-00007819-CU-WM-CTL) |

THE COURT:

The opinion in this case filed January 29, 2025, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to: All parties